By the Court.
Sedgwick, Ch. J.
The learned counsel for defendants, argues, that the contract between the vendor and vendee was executory, and that the title to the phosphates, agreed to be delivered, had not passed to the vendee. The ground of this argument is, that the preponderance of the testimony showed that the phosphates had never been manufactured. The further argument is, that the sub-vendee can have, as assignee of a part of an executory contract, only the action that the vendeewould have, and that the vendee could not recover the-value of the goods if the action were for a breach of the-obligation to deliver, without paying the price or tendering it. In this case, the contract provided, that the price-was to be paid in the notes of the vendee, who became-insolvent, before the time for delivery had come. The-case may be examined on the assumptions of this argument.
These are the material facts : The defendants signed an agreement which was: “We have to-day sold to. Messrs. Eaisin 1000 tons of super-phosphates at $21 a ton on a cash basis, goods to be delivered free on board buyers vessels and in bulk. Settlements are to be made on delivery to buyers of bills of lading by their notes.” This was also signed by the vendees. Before this contract was made, the vendees, the Messrs. Eaisin, had contracted to sell and deliver to De Leon 2000 tons of phosphates, of their own manufacture. At the time for delivery, De Leon was demanding that it should be made, but they had no phosphates of that kind that they could deliver. At a date which the defendants maintain was earlier than. *338 December 9, Messrs. Eaisin proposed to De Leon, that in the place of the 1000 tons of the kind to be delivered under their contract, he should accept the 1000 tons which were to be delivered under the defendants’ contract. This offer was accepted. Before this, as defendants’ maintain, the Messrs. Eaisin, the vendees, had had an interview with their vendors, the defendants. They substantially told the defendants that they had over-sold to De Leon, that is, they had sold to De Leon phosphates that they had not on hand to deliver, and they would have to take the goods under the defendants’ contract, and deliver them to De Leon, under his contract. The defendants assented to this. Afterwards the following was presented to them, for acceptance:
“ December 7, 1881.
“Messrs. Eeed & Co. Gentlemen, please deliver to P. M. De Leon 1000 tons of ammoniated super-phosphates sold to us. E. W. L. Eaisin & Co.” Upon this order the defendants wrote, on December 10, “Accepted Eeed & Co.” The defendants wrote a note to Messrs. Eaisin, “We will deliver to Mr. P. M. DeLeon, on your order, dated December 7, accepted by us to day, one cargo say 500 tons to vessel, to begin loading about the 19th of December, and the remainder of the 1000 tons to a vessel to load the latter part of December, or early in January, 1882 ; vessels to be furnished by De Leon.” The Messrs. Eaisin took the accepted order and the note, delivered them to De Leon, who thereupon on December 10, paid the price agreed to be paid by him, under his contract with the Messrs. Eaisin. On the same day, the Messrs. Eaisin delivered to the defendants their notes, the agreed price of the goods, under their contract, and the defendants accepted them in payment. On December 16, the Messrs. Eaisin & Co. became insolvent. The defendants gave notice to all parties that the order and acceptance were void bn several grounds. The only ground that under the verdict of the jury it is necessary to notice here was, that Messrs. Eaisin & Co. were insolvent.
*339 If the acceptance of the order did not operate upon any title to goods, because no goods existed, or for any other reason, then what was the nature of the arrangement ? It cannot be successfully maintained that it was but a contract between Messrs. Raisin and the defendants. It is not necessary to determine what equitably are the rights of a party holding an unaccepted order by a promisee upon the promisor for the payment of the money, or the delivery of the thing agreed for by the latter. Upon such an order being accepted, its holder and the acceptor enter into an arrangement to which they are parties, and the holder has an action according to the nature of the arrangement as it exists. In the present case, it is manifest, both from the face of the order and from the extrinsic facts, that the intention of both vendor and vendee was that it should be delivered to De Leon. Upon its delivery to De Leon, he became possessed of a promise, that the vendors would deliver to him, instead of to the vendees, the property that was to be delivered to the latter. Upon equitable principles, which in this state are applied in law actions, this promise to deliver operates upon the thing to be delivered, and passes the title to it, in proper cases. But if there be any condition expressed or implied, to be performed before the obligation to deliver is complete, the title cannot equitably pass before the conditions are performed. How, I think that there is a great deal of force in the proposition that the word “ sold ” did not comprehend an assertion that title had passed to the vendees, and that there remained only the matter of delivery. That might be the meaning of the word upon a technical construction. The case substantially shows that all parties knew that the super-phosphates were the subject of a contract, definitely designated, while all its terms were not known to De Leon. They all meant the word ‘ ‘ sold ” to signify what such a word would signify, when applied to a delivery under a contract such as the contract was, according to the facts. But these considerations do not result in the conclusion that the defendants entered into no obliga *340 tion. Equitably, De Leon became possessed of the right to enforce the contract with the defendants according to the terms of the contract. Those terms were that Eaisin & Company should pay the purchase price before the vendees were bound to deliver possession. In other words, the defendants were bound to deliver, upon Eaisin, or any one entitled to act for them, paying what the contract contemplated should be paid. But, in fact, Eaisin & Co. did pay, and the defendants accepted in payment, their notes, made and given by them in the maimer the contract described. If this payment had been money, or the makers had not become insolvent, no question could have been raised as to De Leon’s right to demand delivery under the accepted order.
The makers, however, did become insolvent. This insolvency did not annul the contract or its obligation. Under certain circumstances, it gives the vendor a lien. There can be no lien, without there also being something in existence on which it may rest. It extends only to a right to keep possession of goods, withholding delivery. It may be that it should be the law, that the vendor, upon the vendee’s insolvency, may retain the notes and annul the effect upon the rest of the contract, of the fact of the giving of the notes. Mo such thing was done in this case nor would it have benefited the vendors under these circumstances. De Leon had obtained rights in the meantime which the defendants could not annul.
While De Leon was holder of the accepted order, the condition upon which the defendants were to deliver, namely, payment in the manner provided by the contract, had been performed, so far as contract obligations were concerned. All that was left to the vendors was what may be called a contingent right to keep possession. The vendor may waive this right, or the facts may show that the special contract excludes it. In this case, they have no right to assert it against De Leon.
It has been already said that, through the effect of the; order and acceptance, the defendants had promised to de-' *341 liver, that is, transfer the possession of the goods to De Leon, upon the performance, by Eaisin & Co., of the condition of the original contract. If it be necessary to sustain this by proof of a consideration, it would be found in the defendants being relieved from the obligation to deliver to Eaisin & Co., or what is more in point, after it had been made in anticipation of its delivery to De Leon, and De Leon accepting it, De Leon had released Eaisin & Co. from the obligation to deliver their phosphate, and had paid them the price under his contract, taking as the consideration for that, the accepted order in question. This consideration to the defendants in other words, was a conditional one, or one to be executed in the future. There was a promise to De Leon, that if he would pay to Eaisin & Co. they would deliver possession to De Leon. This was the legal substance of the arrangement. The acceptance was something more than a promise to Eaisin & Co., who drew it, for the benefit of Eaisin & Co. It was made for the benefit also of De Leon. It was intended to become operative when delivered to him. Its form, coupled with the other facts, establishes between the defendants and De Leon an immediate relation.
The result is, that the condition of the original contract having been changed, there was no longer an implication that the vendors could withhold possession from Eaisin & Co., or from De Leon. In the former case, because delivery was not to be made to Eaisin & Co.; in the latter, because for a sufficient consideration, they had promised to deliver to De Leon, upon the condition of the original contract being performed. They had been performed. The basis of the right of vendor’s hen is not a condition of performance of the contract. It is dehors the contract and acts simply upon the facts of possession and unpaid price. It is not an equity, subject to which the assignee takes a contract. If it were an equity, it arose after the assignment was made. The controlling consideration in my mind, is that when for sufficient consideration, the vendor promised to deliver possession to the sub-vendee, *342 if De Leon may be deemed one, the vendor abandoned the right to withhold delivery, that would rest, upon the vendee becoming insolvent.
If these views are correct, it would appear upon the uncontradicted facts of the case, and upon such facts as were established by a preponderance of evidence, that the plaintiffs were entitled to recover the amount of the verdict. No proceeding upon the trial would affect this conclusion.
Judgment and order affirmed, with costs.
Truax, J., concurred.